IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| MARIA-JANETH RODRIGUEZ-SANCHEZ, by her next friend, her father, LUIS RODRIGUEZ, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 04-392-KI |
| vs. | ) ) | OPINION |
| LEO BESNER, PAUL POITRAS, DENISE KUEMPER, and the CITY OF PORTLAND, | ) ) ) ) | |
| Defendants. | ) ) | |

Don S. Willner
630 Sunnyside Road
Troutlake, Washington 98650

Spencer M. Neal
Oregon Law Center
921 S. W. Washington #516
Portland, Oregon 97205

    Attorneys for Plaintiff

David A. Landrum
James G. Rice
Deputy City Attorney
Office of City Attorney
1221 S. W. Fourth Avenue, Room 430
Portland, Oregon  97204

Attorneys for Defendants

KING, Judge:

Plaintiff Maria-Janeth Rodriguez-Sanchez was at a Tri-Met bus shelter when she was approached by officers who asked for her identification.  Although Rodriguez-Sanchez complied with the request, her sudden movement caused the officers to restrain her in a manner which caused physical injury.  Rodriguez-Sanchez alleges claims against the officers and the City of Portland for the common law tort of battery and for constitutional violations of her due process rights and her right to be free from unreasonable seizures.  Before the court is Defendant Kuemper's Motion for Partial Summary Judgment (#46).  For the reasons below, I grant the motion in part and dismiss the due process claim alleged against Kuemper.  Also before the court is Defendant Poitras' Motion to Bifurcate Trial (#44), which I grant as discussed below.

## FACTS

Denise Kuemper works as an officer for the Portland Police Bureau and was assigned to duty as a Tri-Met police officer.  One of her duties was to check the identification of people on Tri-Met property to determine if they are subject to a current exclusion order by Tri-Met.  To make this "R-check," Kuemper must have the person's name and date of birth.

In the early afternoon on April 8, 2003, Kuemper was driving a Tri-Met patrol car and passed Rodriguez-Sanchez and her male companion, Antonio Penaloza-Dominguez, who were

standing at a bus shelter located on the west side of NE Fifth Avenue, immediately north of the intersection of NE Fifth Avenue and NE Couch Street[1] in Portland, Oregon. Rodriguez-Sanchez is a fifteen-year-old student who speaks limited English. She was reading a paper from school while waiting for the bus. Although Rodriguez-Sanchez denies doing so, Kuemper states she saw Rodriguez-Sanchez attempt to hide her face from Kuemper. Based on this, Kuemper concluded that Rodriguez-Sanchez might be under a current exclusion from the Tri-Met system. Kuemper stopped to investigate. She parked her patrol car facing the wrong direction on NE Fifth and turned on the car's overhead lights.

Kuemper walked over to Rodriguez-Sanchez and Penaloza-Dominguez and asked where they were headed. Penaloza-Dominguez said they were going home after getting out of school. Kuemper asked them for identification. Penaloza-Dominguez asked Kuemper why she wanted their IDs but Rodriguez-Sanchez did not see a problem so she told him in Spanish to just give it to Kuemper. They gave their school ID cards and Penaloza-Dominguez's Oregon ID to Kuemper. Kuemper said nothing else[2] and took the identification cards to her patrol car to use the computer terminal in the car to check the identification. Kuemper says that she would have given the IDs back if either had asked for them. Rodriguez-Sanchez did not think that she could leave until she had her ID back because she needed it to ride the bus to school.

---

[1] In her brief, Rodriguez-Sanchez describes this bus shelter as located on West Burnside near Couch, a location that is not too specific because those two streets run parallel in downtown Portland. She does admit that she was at a bus shelter, the fact that is important to my analysis.

[2] Kuemper says that she offered the IDs back before she checked them by extending the IDs out and asking Penaloza-Dominguez if he was "okay with this." For purposes of this motion, I must view the facts in the light most favorable to the nonmoving party, specifically, that Kuemper did not say anything else.

Three male police officers, including defendants Paul Poitras and Leo Besner, then walked up to Rodriguez-Sanchez and Penaloza-Dominguez. One of the officers told Penaloza-Dominguez to take his hand out of his pocket, and Penaloza-Dominguez complied. Rodriguez-Sanchez reached over to take a bottle of pop out of Penaloza-Dominguez's pocket to take a drink from it. Without saying anything to Rodriguez-Sanchez, Besner and Poitras put control holds on her arms. She began pulling her arms to free herself. One of the officers shoved Rodriguez-Sanchez's face into a wall, threw her to the pavement, and held her there. The third officer on the scene, John Grable, states that Besner and Poitras handcuffed Rodriguez-Sanchez. Eventually, the officers helped Rodriguez-Sanchez to her feet.

Kuemper learned from the identification check that Rodriguez-Sanchez had never been under a Tri-Met exclusion order and did not have a police record. Kuemper returned the identification card to Rodriguez-Sanchez and asked if she wanted medical attention, which Rodriguez-Sanchez declined. After conferring with Besner, Kuemper issued Rodriguez-Sanchez a Tri-Met exclusion order. Kuemper issued the order because she believed that Rodriguez-Sanchez had engaged in disorderly conduct with the other officers at the scene. The exclusion states that it is for disorderly conduct and interference with police. The minimum period for a Tri-Met exclusion order is 30 days. Although Kuemper issued the order to Rodriguez-Sanchez on April 8, 2003, it was defective as written because the order stated that it was effective until April 7, 2003, the day before. Rodriguez-Sanchez did not know the exclusion was invalid. She has a monthly bus pass to get back and forth to school which she did not use because of the exclusion.

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**MOTION TO BIFURCATE TRIAL**

Poitras, joined by the other defendants, moves to bifurcate the claim against the City alleged under Monell v. Department of Social Services of New York, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978), and the decision on punitive damages against individual defendants, for a separate trial after the claims for liability of the individual defendants have been decided. Defendants are concerned that evidence of complaints against Besner for using excessive force in prior situations, which is legitimate evidence in the *Monell* claim and the punitive damages decision, is unfairly prejudicial when the jury is deciding the liability of the individual defendants. Defendants also note that judicial resources might be conserved because if the individuals are exonerated in the first trial, the second trial would not take place. Defendants rely on Quintanilla v. City of Downey, 84 F.3d 353 (9th Cir. 1996), cert. denied, 519 U.S. 1122 (1997) which affirmed the trial court's bifurcation of the *Monell* claim.

Rodriguez-Sanchez argues that the same evidence is needed in both phases of the trial. Specifically, she contends that the prior excessive force complaints against Besner may be admitted as evidence of a habit under Federal Rule of Evidence 406. Although I am not yet convinced, I defer any ruling on the issue until it is raised in a motion in limine prior to the trial. Rodriguez-Sanchez is also concerned about the cost of bringing her expert here from out of state on two different days and the emotional toll on herself and her family to have to testify in two separate trials.

After discussing the issue with the attorneys at oral argument, I have conditionally decided to bifurcate the trial into two phases to be decided by the same jury. The first phase will decide the liability of the individual officers. If the jury finds that one or more of the individuals are liable, we will immediately begin the second phase of the trial concerning the *Monell* claim and the request for punitive damages. I will defer deciding which phase of the trial will determine Rodriguez-Sanchez's economic and noneconomic damages until I discuss it with the attorneys at the pretrial conference. To ameliorate the extra expense for Rodriguez-Sanchez, this ruling is conditioned on defendants paying the cost of perpetuating her expert's testimony which would be necessary only for the second phase of the trial. I ask the attorneys to discuss this prior to the pretrial conference so that I can make a final decision there.

## MOTION FOR SUMMARY JUDGMENT

I.  <u>Seizure Claim</u>

Rodriguez-Sanchez alleges that her Fourth Amendment rights were violated when she was detained by Kuemper without reasonable suspicion that she was engaged in unlawful behavior. Kuemper moves for summary judgment dismissing this claim. She argues that the

stop was reasonable because Rodriguez-Sanchez appeared to hide her face from the officer, causing Kuemper to form a suspicion that Rodriguez-Sanchez was under a current exclusion. To check on this possibility, Kuemper had to ask for identification. Kuemper contends that Rodriguez-Sanchez was free to ask for the return of her identification and to leave the scene. Thus, Kuemper argues that, at a minimum, she had reasonable suspicion to perform a *Terry* stop and that her detention of Rodriguez-Sanchez, including the identification check, did not ripen into an arrest.

Rodriguez-Sanchez argues that she was seized, as defined under the Fourth Amendment, considering that Kuemper activated the lights on her patrol car when she initiated the stop and took Rodriguez-Sanchez's identification card over to the patrol car to call it in, thus preventing Rodriguez-Sanchez from leaving the area. She also notes that three uniformed officers came and stood by her, as if guarding her, while Kuemper went to the patrol car to check the identification.

There are three types of police stops under the Fourth Amendment. First, police may stop a citizen for questioning at any time, so long as a reasonable person would feel free to leave. Florida v. Bostick, 501 U.S. 429, 434 (1991). Such brief, "consensual" exchanges need not be supported by a reasonable suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may detain citizens for brief, investigative stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion," a lower standard than probable cause. Terry v. Ohio, 392 U.S. 1, 20-22 (1968). Finally, police stops may be full-scale arrests. These stops are seizures and must be supported by probable cause. Whiteley v. Warden, 401 U.S. 560, 564-66 (1971) (same probable cause standard applies for arrest warrant or warrantless arrest).

PAGE 7 - OPINION

> Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382 (1991) (internal citation omitted).

An investigative stop, as first approved in *Terry*, is reasonable under the Fourth Amendment if the officer has an objective basis to reasonably conclude that criminal activity might be in progress. United States v. Mattarolo, 209 F.3d 1153, 1157 (9th Cir.), cert. denied, 531 U.S. 888 (2000). The officer must have more than a hunch, but probable cause, or even a preponderance of the evidence to show proof of wrong doing, is not required. Id.

Rodriguez-Sanchez has raised a factual issue that once Kuemper took her identification to the patrol car, Rodriguez-Sanchez was not free to leave and was being held in a *Terry* investigative stop. To be constitutional, Kuemper would need to have reasonable suspicion that Rodriguez-Sanchez was involved in criminal activity, specifically that she was on Tri-Met property when subject to an exclusion order. Rodriguez-Sanchez has also raised a factual issue on whether Kuemper had a reasonable suspicion based on her observation that Rodriguez-Sanchez attempted to hide her face. Rodriguez-Sanchez testified that she did no such thing and was not aware that Kuemper was there. The jury could conclude that Kuemper is not being truthful and only made this observation in hindsight to justify the stop. Accordingly, the jury must decide what happened. I deny Kuemper's motion for summary judgment against the Fourth Amendment seizure claim.

II.    Excessive Force Claim

Rodriguez-Sanchez acknowledges that she only alleges an excessive force claim against Besner and Poitras and not against Kuemper.

III.    Due Process Claim

Rodriguez-Sanchez acknowledges that she alleges a substantive due process claim against Kuemper, and not a procedural due process claim[3], based on being excluded from Tri-Met property without any reasonable basis. She contends that the exclusion deprived her of her property interest in her monthly bus pass and likewise deprived her of her liberty interest in freedom of movement in the city.

Kuemper contends that the Fourth Amendment, and not the Due Process Clause, should be used to contest an allegedly unconstitutional seizure. Rodriguez-Sanchez is not contesting the seizure under the Due Process Clause, however, but limits this claim to the effect of the Tri-Met exclusion[4].

Kuemper also argues that she did nothing that rises to the level of shocking the conscience which is required to support a substantive due process claim and that she did not act in an arbitrary and capricious manner. Rodriguez-Sanchez contends that the exclusion was arbitrary and unfounded because she was the victim of a police assault and should not have been excluded based on disorderly conduct or interference with a police officer.

---

[3] Rodriguez-Sanchez states that any procedural due process claim only lies against Tri-Met for its failure to provide pre-deprivation hearings for the exclusion.

[4] Consequently, I presume that Rodriguez-Sanchez only alleges a due process claim against Kuemper and not the other defendants.

Substantive due process forbids the government from depriving a person of life, liberty, or property in "such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (internal quotation omitted). Moreover, substantive due process "bar[s] certain government actions regardless of the procedures used to implement them." Sagana v. Tenorio, 384 F.3d 731, 742 (9th Cir. 2004) (internal quotation omitted), cert. denied, 125 S. Ct. 1313 (2005). To prevail in a substantive due process claim, a plaintiff must show a government deprivation of life, liberty, or property as a threshold matter.

> "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). These fields likely represent the outer bounds of substantive due process protection. See Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.").

Nunez, 147 F.3d at 871 n.4. When dealing with abusive executive action, and not legislative action, the Court has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense" sufficient "that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846, 847 n.8, 118 S. Ct. 1708 (1998) (high-speed police pursuits with no intent to harm suspects physically or to worsen their legal plight, even when resulting in death, do not rise to liability for a deprivation of substantive due process) (internal quotation omitted).

I will assume that Rodriguez-Sanchez's property interest in her $20 monthly bus pass is sufficient on which to base a substantive due process violation. But I cannot conclude that

Rodriguez-Sanchez can prove conduct on the part of Kuemper which is egregious enough to shock the conscience. At worst, Kuemper intentionally excluded Rodriguez-Sanchez from public transit for a month, ignoring that the exclusion was invalid as written. This deprivation does not touch on a fundamental right or rise to the level of other substantive due process violations courts have found. See, e.g., Rochin v. California, 342 U.S. 165, 72 S. Ct. 205 (1952) (deputy sheriff ordered a physician to forcibly pump a suspect's stomach to produce vomiting so that drugs swallowed by the suspect could be retrieved).

The two cases Rodriguez-Sanchez cites are distinguishable from her situation. In Yeakle v. City of Portland, 322 F. Supp. 2d 1119 (D. Or. 2004), the court held that the city ordinance used to exclude plaintiffs from Pioneer Square, where they had been collecting signatures on a political petition, violated substantive due process. The fundamental right at issue was plaintiffs' freedom of speech. Id. at 1128-29. Rodriguez-Sanchez's free speech rights are not implicated. Likewise, the fundamental right at issue in Nunez v. City of San Diego, 114 F.3d 935 (9th Cir. 1997) (challenge to city's juvenile curfew), parents' rights to rear their children without undue government interference, is not implicated here.

I conclude that Rodriguez-Sanchez cannot prove a substantive due process violation and grant summary judgment dismissing the claim.

///

///

///

## CONCLUSION

Defendant Poitras' Motion to Bifurcate Trial (#44) is granted. Defendant Kuemper's Motion for Partial Summary Judgment (#46) is granted in part, dismissing the due process claim.

Dated this   12th   day of April, 2005.

        /s/ Garr M. King
        Garr M. King
        United States District Judge